# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**EDGAR PADILLA ROMÁN, et. als.,**
**Plaintiffs**

**v.**                                                                   **CIVIL NO. 04-1525 (DRD)**

**JOSÉ M HERNÁNDEZ PÉREZ, et als.,**
**Defendants**

## OPINION AND ORDER

Pending before the Court is a civil action (Docket No. 1) brought forth by plaintiffs Edgar Padilla Román (hereafter "Padilla") and his wife Yolanda Acevedo Pérez, together with the conjugal partnership, against defendants José M. Hernández Pérez (hereafter "Hernández") in his personal and official capacity as Chairman of the Public Service Commission (hereafter PSC), and Edgar González Moreno (hereafter González), in his personal capacity as former Administrator of the PSC, including their wives and conjugal partnerships, under Title VII of the Civil Rights Act of 1964 (42 U.S.C.§§ 2000e-5 et seq.) and the Civil Rights Act of 1991 (42 U.S.C.A. § 1981 et seq. including § 1983). Padilla alleges he was illegally terminated because of discrimination due to his political affiliation related to the New Progressive Party ("PNP"). There are other claims contemplated in this civil action under supplemental jurisdiction that include the Puerto Rico Civil Rights Act (1 P.R. Laws Ann. §§ 13-19), and articles 22 and 1802 of the Puerto Rico Civil Code (31 P.R. Laws Ann. §22, and §5141). Plaintiffs are seeking an injunctive relief, punitive damages and compensatory damages for the loss of salaries and mental anguish caused to the plaintiffs.

Defendants filed a *Motion to Dismiss* (Docket No. 23), without submitting to this Court's jurisdiction, alleging that the present action should be dismissed under Fed. R. Civ. P. 12 (b)(6) by virtue of plaintiffs' failure to state a claim: (a) against the appearing Defendants pursuant to §1983; (b) under Title VII of the Civil Rights of Act of 1964, and (c) under the Puerto Rico Civil Rights Act

(1 P.R. Laws Ann. §§ 13-19).  Plaintiffs then filed an *Opposition to Motion to Dismiss* (Docket No. 29) submitting that defendants' motion should be denied since the *Verified Complaint* fully complies with the Federal Rules of Civil Procedure warranting a claim pursuant to §1983 and other state causes of action.

After considering the allegations presented by both parties, this Court hereby **GRANTS IN PART AND DENIES IN PART** *Defendants' Motion to Dismiss*.  **Defendants are ordered to answer the complaint within twenty days; no extensions are to be granted**.

### FACTS [1]

On November 7, 2003 Padilla was terminated from his position as an Executive Director I of the General Services Division at PSC, employment position within the government of the Commonwealth of Puerto Rico (hereafter "Commonwealth").  At the time, he  had a long lasting employment at the PSC of twenty nine (29) years and eight (8) months, and was barely four months away from qualifying for a pension.

Approximately about a year before the termination being challenged herein, during the month of October 2002, Hernández became the Chairman of the PSC.  A month later, on November 2002, Ms. Brenda Adorno Vega (hereafter "Adorno") was hired to work at the PSC as Office Worker I. Both individuals are alleged to be members and activists of the Popular Democratic Party ("PDP").  Padilla was Adorno's superior officer.

As supervisor in charge, Padilla was asked to evaluate the performance of Adorno.  He was to inform on Adorno's work  performance to co-defendants González who was, at  the time, the Administrator of the PSC.  Soon after the conversation with González, Padilla was visited by two

---

[1] This Court acknowledges that the Defendant's *Motion to Dismiss* fails to controvert any of the facts stipulated in the *Verified Complaint*.  The Court must make all reasonable factual inferences in favor of plaintiff and accept all well pleaded facts in the complaint when confronted with a motion to dismiss under Fed. R. Civ. P. 12 (b)(6). <u>Aulson v. Blanchard</u>, 83 F.3d 1,3 (1st Cir. 1996).

employees of the Human Resources Division of the PSC who, in turn, required him to evaluate Adorno's performance in a positive manner. Padilla refused to follow this order. Consequently, on February 4, 2003, Hernández sent a letter to Padilla stating that he observed communications problems between Adorno and Padilla and that, effective immediately, Adorno would be under González's supervision. Padilla replied, on February 10, 2003, stating that he was unaware of any communications problems between him and Adorno. Thereafter, Padilla was under continuos pressure to finish those reports previously assigned to Adorno, and was curiously subjected coetaneously to four investigations. Furthermore, González expressed to Padilla that, because Padilla was not a member of the PDP, he could not be considered for the position of Executive Director II **-a regular career position**- even though Padilla had been temporarily occupying the position for about a year.

Padilla complied with the reports he was required to perform, including the reports and evaluations of Adorno's performance. Once again, Padilla evaluated Adorno's performance poorly using his judgment and not following the required pre-imposed orders. When Adorno became aware of this report, she made false and fabricated allegations against Padilla, including that he had sexually harassed her and that her rejection was the real reason for the negative evaluation results. After being confronted by the Human Resources Director of the PSC, **Adorno confessed that she had initiated those allegations against Padilla as a result of the fabrications and machinations requirements by González and an attorney of the PSC**. Subsequently, Adorno was discharged from her employment, causing González to take action in revenge against Padilla. Given the situation, Padilla tried to obtain a meeting with Hernández to explain the obvious blatant pattern of political harassment he had been subjected to, but he was unsuccessful.

On June 2, 2003, Padilla was transferred to the Documents Administrations Area (hereafter

DAA), a PSC office in the Bayamón Regional Office, allegedly because of the need of service in this area.  However, he was never provided with any assignments or tasks. He was not even informed the identity of his supervisor.  On this day, Padilla cleaned and evacuated his personal and professional working area.  In a large garbage bag, he collected those personal items he did not need and copies of alleged **then irrelevant and unusable documents which included  transmittal sheets that had been previously duly processed by the PSC and other papers that had prior thereto been abandoned there by his predecessors**.  The garbage bag allegedly never left the PSC offices.  **Padilla specifically avers not having shredded any official documents.**

On June 11, 2003, Padilla was called by the Internal Auditor's Office of the PSC  inquiring as to the reason behind the disposal of official documents.  He explained his reasons to the Head Auditor (among others, the documents had already been processed).  To his surprise, he realized that prior thereto on June 2, 2003,  **Hernández notified him that they were considering discharging him of his employment in PSC for destruction of official documents and that he had a right to request a hearing**.

Subsequently, an administrative hearing was held in September 2003 at the PSC's, central offices.  The hearing examiner requested Padilla to produce the documents in question.  Padilla informed them he did not have them.  Several months elapsed and, on September, Padilla was called by Ms. Mayte Hernandez, González's successor, to report back to the Hato Rey PSC offices to perform his regular duties as Executive Director I twice a week.  Hence, Defendants working conditions became even more onerous by having to work three days a week in Bayamón and two days a week in Hato Rey.

Finally, on November 7, 2003 Padilla was called into Hernández's office and was handed a letter of discharge.  **The letter was dated October 17, 2003, but was handed to Padilla  on**

**November 7, 2003**, **constituting a blatant potential example of an attempt to defeat procedural rights of the plaintiff to a pre-determination hearing and other potential procedural and substantive rights**. The letter of discharge explains that Padilla had breached paragraphs 25, 27 and 28 of the Corrective Measures' Manual by having destroyed documents.

On June 2, 2004, Padilla filed the instant Complaint against Hernández and González alleging that he was illegally terminated from his employment because of political discrimination and under the pretextual disguise of destruction of public documents.

## MOTION TO DISMISS STANDARD R. 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief may be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also* Miranda v. Ponce Fed. Bank, 948 F.2d 41 (1st Cir.1991). The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d at 3 (1st Cir. 1996)(citations omitted); *see also* Berríos v. Bristol Myers Squibb Caribbean Corp., 51 F.Supp.2d 61 (D.Puerto Rico 1999). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 28 n. 2 (1st Cir.1996) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988)).

Therefore, in order to survive a motion to dismiss, plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain

recovery." <u>Gooly v. Mobil Oil Corp.</u>, 851 F.2d 513 (1st Cir. 1988). In sum, a claim shall be dismissed under Rule 12(b)(6) **only if it appears beyond doubt that the pleader can prove no set of facts in support of the claim that would entitle the pleader to relief.** <u>Conley</u>, 355 U.S. at 78. (*Emphasis added*).

However, the Court is not obligated to accept plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996). The Court must only accept those facts that are "well pleaded," limiting its inquiry into the allegations of the complaint. <u>Litton Indus., Inc. v. Colon</u>, 587 F.2d 70, 74 (1st Cir. 1978). In sum, the Court's focus should always be on "whether a liberal reading of [the complaint] can reasonably admit of a claim . . . ." <u>Id.</u>; <u>see</u> <u>also</u> <u>Rogan v. Menino</u>, 175 F.3d 75 (1st Cir. 1998).

A district court's dismissal of a claim under Rule 12(b)(6) is reviewed *de novo* by the appeals court; such court "accept[s] as true all well-pleaded factual averments and indulg[es] all reasonable inferences in the plaintiff's favor." <u>Calderon Ortiz v. Laboy Alvarado</u>, 300 F.3d 60, 62-63 (1st Cir. 2002); <u>SEC v.SG Ltd.</u>, 265 F.3d 42, 46 (1st Cir. 2001). Accordingly, "if the facts contained in the complaint, viewed in this favorable light, justify recovery under any applicable legal theory", any order of dismissal by the district court shall be set aside. <u>Calderon Ortiz</u>, 300 F.3d at 63; quoting, <u>Conley</u>, 355 U.S. at 45-46; <u>Aulson</u>, 83 F.3d at 3.

## LEGAL STANDARD

## SECTION 1983 CLAIM

Plaintiffs base their federal question claim on § 1983 of Title 42 of the United States Code using as underlying constitutional causes based on the First, Fifth, and Fourteenth Amendments (Docket No. 1). Pursuant to 28 U.S.C. § 1331, the federal courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Accordingly, said section's purpose "...is to provide a remedy in federal court in protection of federal

rights." <u>Birnbaum v. Trusell</u>, 371 F. 2d 672 (2nd Cir. 1966). Specifically, it "...deters state actors from using badge of their authority to deprive individuals of their federally guaranteed rights and provide relief to victims whenever such deterrence fails." <u>Rueben Corp. v. Brauer</u>, 655 N.E. 2d 1162 (1995); <u>Wyatt v. Cole</u>, 504 U.S. 158, 112 S.Ct. 1827 (1992); <u>City of Newport v. Fact Concerts Inc.</u>, 453 U.S. 247, 101 S.Ct. 2748 (1981).

Section 1983 authorizes actions for equitable relief and/or damages against "every person who under color of any . . . custom or usage, of any State or Territory . . . subjects or causes to be subjected any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Thus, in order to state a claim cognizable under Section 1983, Plaintiff must allege "that some person [under the color of state law] has deprived him of a federal right." <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980).

To prevail in an action brought under 42 U.S.C. § 1983, Plaintiff must satisfy two prongs. First, he must prove that he was deprived of a right, immunity, or privilege secured by the Constitution or laws of the United States. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981); <u>Baker v. McCollan</u>, 443 U.S. 137, 140 (1979); <u>Voutour v. Vitale</u>, 761 F.2d 812, 819 (1st Cir.1985). Second, he must have been deprived of his right, immunity or privilege, by a person acting under color of state law. <u>Id</u>. Moreover, the first prong has two distinct elements to be addressed. First, there must have been a violation of rights secured by the Constitution or laws of the United States, <u>Voutour</u>, 761 F.2d at 819; and, defendants' conduct must have caused the deprivation of Plaintiff's rights. <u>Valdivieso Ortiz v. Burgos,</u> 807 F. 2d 6, 7 (1st Cir. 1986); *See also* <u>Soto v. Carrasquillo</u>, 878 F.Supp. 324, 326-327 (D.P.R. 1995).

### ELEVENTH AMENDMENT

The Eleventh Amendment bars a suit brought in federal courts for monetary damages against states, unless the state being sued has waived its immunity or consents to be sued. This protection

renders states, including Puerto Rico, immune from claims brought in federal courts by citizens of the same or any other state.[2]  Metcalf & Eddy v. Puerto Rico Acueduct & Sewer Authority, 991 F.2d 935, 939 (1st Cir. 1993).This immunity does not solely protect the State.  Rather, since a State only exists through  its instrumentalities, Eleventh Amendment immunity also extends to arms or "alter egos" of the State, which includes the officers acting on behalf of the state.  Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Puerto Rico, 818 F.2d 1034, 1036 (1st Cir.1987); see also, Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977).  The question of whether a certain entity is considered an arm of the Commonwealth of Puerto Rico warranting the Eleventh Amendment protection against suits at the federal forum is a question of federal law. Fresenius Medical  v. Puerto Rico Cardiovascular, 322 F.3d 56, 61 (1st Cir., 2003) citing Regents of the University of Cal. v. Doe, 519 U.S. 425, 429 n.9 (1997).

On occasions, agencies exercising state power have been protected by the Eleventh Amendment immunity in order to protect the state treasury. However, "a 'slice of state power', without more, will not sate the Eleventh Amendment." Metcalf & Eddy v. Puerto Rico Acueduct & Sewer Authority, 991 F.2d at 939 quoting  Lake Country Estates Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 401 (1979). The primary concern for this protection is to "minimize the federal court's involvement in disbursal of the state fisc."Metcalf & Eddy v. Puerto Rico Acueduct & Sewer Authority, 991 F.2d at 939. Accordingly, the Supreme Court has reasoned that, if the

---

[2]

In an unbroken string of cases over the last two decades, the First Circuit consistently has held that Puerto Rico is considered a "State" for Eleventh Amendment purposes, and therefore, Eleventh Amendment applies with full force to the Commonwealth of Puerto Rico. See, e.g., Negron Gaztambide v. Hernandez Torres, 145 F.3d 410 (1st Cir.1998); Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935, 939 n. 3 (1st Cir.1993); Avilés-Martínez v. Monroig, 963 F.2d 2, 8 (1st Cir.1992); De León López v. Corporación Insular de Seguros, 931 F.2d 116, 121 (1st Cir.1991); Culebras Enterprises Corp. v. Rivera Ríos, 813 F.2d 506, 516 (1st Cir.1987); Ainsworth Aristocrat Int'l Pty., Ltd. v. Tourism Co. of P.R., 818 F.2d 1034 (1st Cir.1987); Fernández v. Chardón, 681 F.2d 42, 59 n. 13 (1st Cir.1982) (Puerto Rico enjoys the full benefits of the Eleventh Amendment); Ezratty v. Com. of Puerto Rico, 648 F.2d 770, 776 n. 7 (1st Cir.1981) ("The principles of the Eleventh Amendment, which protect a state from suit without its consent, are fully applicable to the Commonwealth of Puerto Rico."); Litton Indus., Inc. v. Colón, 587 F.2d 70 (1st Cir.1978) (action against Puerto Rico barred by Eleventh Amendment, unless immunity is expressly abrogated by Congress acting under the Fourteenth Amendment).

judgment against the agency is equivalent to a judgment against the state (since the state would have to respond for it), then the agency should be protected. <u>Lake Country Estates Inc. v. Tahoe Regional Planning Agency</u>, 440 U.S. at 400-401. However, "it is not just the state's interest in it's public treasury which is a stake in the assertion of Eleventh Amendment Immunity. The state also has a 'dignity' interest as a sovereign in not been haled into federal courts."<u>Fresenius Medical</u>, 322 F.3d at 63, *citing* <u>Fed. Mar. Comm'r v. S.C. State Ports Authority</u>, 535 U.S. 743 (2002).

When assessing whether an entity created by the state, as is the PSC, should be sheltered by the Eleventh Amendment immunity, the courts should determine how the state structured  said entity. <u>Fresenius Medical Care v. Puerto Rico Cardiovascular</u>, 322 F.3d at 65. "It would be [...] an affront to the state's dignity and fiscal interests were a federal court to find erroneously that an entity was an arm of the state, when the state did not structure the entity was an arm of the state, when the state did not structure the entity to share  its sovereignty." <u>Id</u>. at 63. The federal court, in assessing if the state intended to consider the entity as an arm of the state, may consider indicators such as  the: "(1) extent of state control including through the appointment of board members and the state's power to veto board actions or enlarge the entity's responsibilities;(2) how the enabling and implementing legislation characterized the entity and the state courts have viewed the entity;(3) whether the entity's functions are readily classifiable as state functions or local or non governmental functions and; (4) whether the state bore legal liability for the entities debts". <u>Id</u>. at 65 n.7 *citing* <u>Hess v. Port Authority Trans Hudson Corp</u>., 513 U.S. 30, 44-46, 155 S. Ct. 394, 130 L.Ed. 2d 245 (1994).[3] However, if these indicators point in different directions, then, "the vulnerability of the

---

[3]

Other inquiries that might clarify the institutions's structure and function are:"(1) whether the agency has the funding power to enable it to satisfy judgments without direct state participation or guarantees;(2) whether the agency's functions is governmental or proprietary; (3) whether the agency is separately incorporated;(4)whether the state exerts control over the agency, and if so, to what extent;(5)whether the agency has the power to sue, be sued and enter contracts in its own name and right; (6) whether the agency's property is subject to state taxation; and (7)whether the agency has immunized itself from responsibility for the agency's acts o omissions." <u>Metcalf & Eddy v. Puerto Rico Acueduct & Sewer Authority</u>, 991 F.2d at 939-940.

state's purse is the most salient factor in the Eleventh Amendment determination." Fresenius Medical, 322 F.3d at 65. If this second prong, or vulnerability inquiry, is reached, the court should then examine whether there is an obligation of the state to pay any judgment imposed on the entity by the federal court. The courts are not free to assume said obligation. Further, the court should address any other sources of revenue for the entity, and whether the entity is constantly dependent on the state. Id., at 665, n.8 citing Hess, 513 U.S. at 49-50.

In sum, the main inquiry when assessing if a certain entity should be considered an arm of the state in order to be entitled to the Eleventh Amendment immunity is whether the state structured the entity to share its sovereignty. If, after this assessment as to the structure of the entity, the court reaches no clear answer then "the dispositive question concerns the risk that the damages will be paid from the public treasury" focusing on whether the state has any legal or practical obligation to pay for the entity's debts. Fresenius Medical, 322 F.3d at 68.

After analyzing whether or not the PSC is an arm of the state pursuant to federal law, as we are required under the teachings of Fresenius Medical, 322 F.3d at 61-75 and in Metcalf & Eddy, 991 F 2d at 939-940, it is unquestionable that the PSC is an arm of the state pursuant to the law. The agency is empowered to grant all authorizations of public nature, including the right to use or cross public highways or public water, regulate public service companies and contract carriers, regulate private vehicle enterprises, regulate tourist transportation, impose administrative fines to regulated enterprises and further to establish rates of public carriers. See generally, 27 P.R. Laws Ann. §§1101-1103. The Commission is composed of five Public Service Commissioners all appointed by the Governor of Puerto Rico. 27 P.R. Laws Ann.§1052. All proceedings are by law in the name of the Commonwealth of Puerto Rico. Id. §1051. Finally, all fees collected by the PSC are to be covered into the books of the Secretary of the Treasury of the Commonwealth of Puerto Rico and the operational budget comes from the General Budget of the Commonwealth. Id. §1111(b). Hence

the PSC and the officials warrant Eleventh Amendment Immunity.

There are some narrow exceptions to the Eleventh Amendment bar. First, a state may waive its immunity or consent to be sued in federal court. *See. e. g.* Edelman v. Jordan, 415 US 651, 673, 94 S.CT. 1347, 1360, 39 L.Ed. 2d 662, 678 (1974); Paul N. Howard, Co v. Puerto Rico Aqueduct Sewer Authority, 744 F. 2d 880, 886 (1st Cir. 1984) *cert. denied*, 469 U.S. 1191, 105 S. Ct. 965, 83 L.Ed. 2d 970 (1985). Second, " a suit challenging the constitutionality of a state official's action is not one against the State." Penhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102, 104 S. Ct. 900, 909, 83 L.Ed. 2d 970 (1984) (stating that was the holding in Ex parte Young, 209 U.S. 129, 28 S. Ct. 441, 52 L.Ed. 2d 714(1908)); *See also,* Edelman v. Jordan, 415 U.S. at 666-667, 94 S. Ct. at 1357-1358, 39 L.Ed. 2d at  674-676  (Injunction is available governing official's future conduct, such as the reposition in employment and the seeking of cease and desist from a continuing unconstitutional conduct, but retroactive relief is barred by the Eleventh Amendment.). Third, a citizen may seek monetary damages against a state officer for acts done while the officer was acting in his or her official capacity. *See,* Kentucky v. Graham, 473 U.S. 159, 105 S. Ct. 3099, 87 L.Ed. 2d 114 (1985).  Fourth, when Congress has "unequivocally expresse[d] its intent to abrogate the immunity" and has acted "pursuant to a valid exercise of power."  Green v. Mansour, 474 U.S. 64, 68, 106 S. Ct. 423, 426, 88 L.Ed. 2d 371, 377 (1985).  However, in reference to this fourth exception, the United States Supreme Court has only recognized one provision of the Constitution-§5 of the Fourteenth Amendment, which provides Congress with the authority to abrogate a State's Eleventh Amendment immunity. *See,* Seminole Tribe v. Florida, 517 U.S. 44, 116 S. Ct. 1114, 134 L.Ed. 2d 252 (1996) (*overruled* Pennsylvania v. Union Gas Co., 491 U.S. 1, 109 S. Ct. 2273, 105 L.Ed. 2d 1 (1989), thereby eliminating Interstate Commerce Clause as an authority to abrogate); *see also* Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S. Ct. 2666, 2671, 49 L.Ed. 2d 614, 622 (1976), (In a sexual discrimination claim, the court held that the Eleventh Amendment is limited by the

Page 11 of  20

enforcement power under §5 of Fourteenth Amendment to enforce the Fourteenth Amendment's substantive provisions).

In the case at bar, none of the exceptions to Puerto Rico's Eleventh Amendment immunity are applicable except ,of course, for the prospective equitable relief of injunctive relief, explained herein.  The first exception is inapplicable because Puerto Rico has neither consented to this action in federal court, nor has the Commonwealth waived its sovereign immunity against being sued in a federal court.  *See,* Perez- Bourdon v. Com. of Puerto Rico, 951 F. Supp. 22, 24 (D.P.R. 1997) (citing 32 L.P.R.A. §3077). The fourth exception was foreclosed by the First Circuit which recently, following *Seminole Tribe*, held that Congress did not have the authority to abrogate Eleventh Amendment immunity with regard to a private FLSA action. *See also,* Mills v. Maine 118 F. 3d. 37 (1st Cir. 1997).

The Eleventh Amendment Immunity prevents suits seeking monetary relief to be paid out from the state treasury.  Thus, any attempt to sue a state officer in his or her official capacity for the only purpose of seeking monetary relief will be barred by the Eleventh Amendment.  Consequently, in order to sue a state officer in his or her official capacity, a party must seek injunctive, not monetary relief (i.e. the second exception above).  In the instant case, plaintiffs also have brought forth causes of action against defendant, Jose Hernández, in his official capacity for the only purpose to end prospective discriminatory violations and/or to request prospective reinstatement in employment, which is clearly authorized under Ex parte Young, 209 U.S. 129, 28 S. Ct. 441, 83 L.Ed. 2d 714 (1908) and its progeny, such as Mill v.Maine, 118 F. 3d. 37, 53 (1st Cir. 1997).[4]

## QUALIFIED IMMUNITY DOCTRINE

Qualified immunity shields public officials performing discretionary functions from civil

---

[4]Defendants curiously under Motion to Dismiss standard denied the availability of the injunctive relief requested, thereby ignoring Supreme Court jurisprudence that is almost a century old.  Ex parte Young 209 U.S. 129, 28 S. Ct. 441, 83 L.Ed. 2d 714 (1908).

damages, so long as their conduct does not violate clearly established statutory or constitutional rights, of which an objectively prudent person would be aware.  Harlow v. Fitzgerald 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed. 2d 396 (1982); Ringuette v. City of Fall River, 146 F.3d 1, 5 (1st Cir. 1998).  Essentially, "[q]ualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" United States v. Lanier,520 U.S. 259, 117 S. Ct. 1219, 1227, 137 L.Ed. 2d 432 (1997) (citations omitted); Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L.Ed. 2d 523 (1987).

A qualified immunity defense requires a three-part analysis: "The first inquiry is whether the constitutional right asserted by plaintiffs was clearly established at the time of the alleged violation. The second, if the right was clearly established, is whether a reasonable officer in the same situation would 'have understood that the challenged conduct violated that established right.'" *see,* Aponte Matos 135 F.3d 182, 186 (citations omitted).  Under the first prong, an official can only be liable for damages if the unlawfulness of his conduct is apparent in light of preexisting law.  *See,* Anderson, 483 U.S. at 641, 107 S.Ct. at 3040, 97 L.Ed.2d at 523.  The second prong demands objective reasonableness from the employer: the actions must be such that 'a reasonable [employer] could have believed [his actions] to be lawful, in light of clearly established law and the information the [acting employer] possessed.'" Aponte Matos v. Toledo Davila, 135 F.3d at 186 (*quoting* Anderson, 483 U.S. at 641, 107 S.Ct. at 3040, 97 L.Ed. 2d 523).  The third prong asks "whether a reasonable officer, similarly situated, would understand that the challenged conduct violated the clearly established right at issue." Riverdale Mills Corp. v Pimpare, 392 F. 3d. 55, 60-61 (1ˢᵗ Cir. 2004).

Concerning the qualified immunity defense, the First Circuit has observed the following: pretrial resolution sometimes will be impossible because of a *dispute as to material*

Page 13 of  20

*facts*.  In such a case, the factual issues *must* be decided by the trier of fact, thereby
precluding summary judgment.  Only after the facts have been settled can the court
determine whether the actions were objectively reasonable so as to fall under the
qualified immunity umbrella.

Kelley v. Laforce, 288 F.3d 1, 7 (1st Cir. 2002) (citations omitted) (*emphasis ours*).

## CLAIMS PURSUANT TO TITLE VII

Title VII of the Civil Rights Act of 1964 makes unlawful for an employer to discriminate

against an employee because of such individual's race color, religion, sex or national origin. 42

U.S.C. §§2000e-2 and 2000e-3. Furthermore, there are states which have construed statues parallel

to Title VII.  In turn, these states require that a complaint be filed with the EEOC within 300 days

after the alleged discriminatory act.  Title VII of the Civil Rights Act of 1964, § 706 (e), 42 U.S.C.

§2000e-5(e).  Title VII also requires that the claim be considered by the state employment

discrimination agency before it can be filed with the EEOC. 42 U.S.C. §2000e-5(c).  To help

claimants comply with this "deferral" requirement, the EEOC will transmit to the state agency any

claim which it receives from an individual who originally did not  file under state law.  *See*, Love

v. Pullman, 404 US 522, 524, 92 S. Ct. 616, 30 L.E. 2d 679 (1972). The claim with the EEOC is

held in "suspended animation", Id. at 526, until after the period of deferral specified by section

706(c),and then it is automatically deemed filed with the federal agency.  Under section 706 (c)'s

deferral provision, this automatic filing may not occur until either state proceedings have been

terminated, or 60 days have elapsed since the filing with the state agency.  Together, the deferral and

the deadline provisions of Title VII,  mandate, first, that a charge filed with a state agency by the

240th day after an alleged violation will always be timely under federal law since the 60-day deferral

period will invariably  run within the 300-day limitation period.  Second, a charge submitter after

the 240th day will be timely only if the state "terminates" its proceedings by the 300th day.

## SUPPLEMENTAL JURISDICTION

The Judicial Improvements Act of 1990, 28 U.S.C.A. 1367, provided statutory authority for the federal courts to exercise their jurisdiction over state claims and/or additional parties over which it would not otherwise have jurisdiction when those claims arise from a common nucleus of operative facts. Said Act provides:

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. 28 U.S.C.A. 1367(a).

Therefore, pursuant to the aforementioned section, "a federal court may exercise supplemental jurisdiction over a state claim whenever it is joined with a federal claim and the two claims 'derive from a common nucleus of operative facts'". <u>Vera-Lozano v. International Broadcasting</u>, 50 F.3d 67,70 (1st Cir., 1995).

However, in some instances, pursuant to section 1367 (c) from the Judicial Improvements Act of 1990, the Court has discretion to dismiss a state law cause of action. 28 U.S.C.A. 1367 (c):

The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C.A. §1367 (c).

## LEGAL ANALYSIS

In the present case, defendants seek dismissal asserting that the Eleventh Amendment precludes plaintiffs from suing Jose Hernández in his official capacity  under section 1983 of Title VII of the Civil Rights Act of 1991.  Plaintiffs' allege in their *Opposition to Motion to Dismiss* that "Hernandez is sued in his official capacity in connection with the injunctive relief" (Docket No. 1 at p. 12, ¶ 14 ).  Under the Eleventh Amendment of the Constitution of the United States, federal courts do not possess jurisdiction over suits against a state by citizens of another state, or citizens of the same state.  Nonetheless,  the Eleventh Amendment allows, as an exception, the right for a plaintiff to sue an individual state officer, in his official capacity for prospective injunctive relief to end ongoing discriminatory violations and/or to request prospective reinstatement in employment.  *See,* Ex parte Young,209 U.S. at 189,  Mills v. Maine 118 F 3d at 53.  In the case at bar, plaintiffs have brought forth causes of action against a particular state officer, José Hernández, in his official capacity.  Plaintiffs request the Court enter a preliminary and permanent injunction ordering defendant Hernández in his official capacity to (a) refrain and abstain from further violating the plaintiff's constitutional and civil rights, and interfering with the plaintiff's exercise of his rights as an employee of PSC, (b) refrain and abstain from interfering with plaintiff's rights by continuing with Padilla's dismissal as an employee of the PSC,  (c) refrain and abstain from further interfering with plaintiff's rights by maintaining a third party occupying the plaintiff's position in the PSC, and (d) ordering the reinstatement of Padilla to his former position at the PSC with the same salary, plus any increases thereof.  (Docket No. 1, p. 17 ¶ 3, Docket No. 29, pp. 1-2 ¶ 1).  As requested, plaintiffs are entitled to seek an injunctive relief against defendant Jose Hernández to refrain and abstain from committing any further ongoing violations to plaintiff Padilla Román and to prospective reinstate him in his employment at the PSC.  As previously explained, the Eleventh Amendment, as an exception, undoubtedly allows the federal court the power to grant a prospective injunctive relief

and/or declaratory judgment against a state officer in his official capacity. Mills v. Maine, id. Moreover, since at a motion to dismiss stage in the proceedings the Court is obligated to accept as true all well pleaded allegations, the Court cannot grant defendants' request for dismissal. Consequently, defendants' motion to dismiss all claims relating to defendant Jose Hernández in his official capacity is **DENIED** at motion to dismiss stage.[5]

Defendants, Jose Hernández and Edgar González, are also being sued under section 1983 in their individual capacity.  Defendants establish that they are entitled to qualified immunity as to the federal causes of action brought forth against them in their individual capacity.  Having presented the applicable three pronged-test for a qualified immunity defense, and, because under a  motion to dismiss standard as provided by Fed. R. Civ. P. 12(b)(6), the Court most view in the light most favorable to the plaintiff all well-pleaded factual averments, this Court finds that defendants may not at Motion to Dismiss standard be granted qualified immunity.  In the Complaint, plaintiffs allege, firstly, that plaintiff-Padilla was visited by two employees of the Human Resources Division of the PSC, ordering him to evaluate another employee's performance, an activist of the PDP,  in a positive manner, *see* (Docket No. 1, p. 4); secondly, that because of Padilla's refusal to follow said order, he was subjected to four investigations and numerous request for reports by his superiors at work, *see* (Docket No. 1, p. 5); thirdly, that one of Padilla's superiors, González, told Padilla that because of his political affiliation he was not to be considered for the career (non-trust) position of Executive Director II, *see* (Docket No. 1, p. 5); fourthly, that because of the fabrication and machinations by González and an attorney called Waldemar Cima de la Villa, both employees of PSC, Padilla was subjected to false allegations of sexual harassment by a female co-worker by the name of Adorno, (originally Adorno was ordered to fabricate a case against Padilla)  *see* (Docket No. 1, p. 6); fifthly,

_____

[5] Again, the Court is disappointed with defendants allegations that at Motion to Dismiss stage, wherein the court must accept all well plead facts alleged, <u>Aulson v. Blanchard</u>, 83 F.3d at 3, defendants negate the availability of <u>Ex Parte Young</u>, 209 U.S. 129 and its progeny.

that Adorno recanted her sexual harassment claim against Padilla and confessed that she had initiated those false allegations against Padilla because of the political machinations of Gonzalez and Waldemar Cima de la Villa, *see* (Docket No. 1, p. 6); sixthly, that because of a pattern of political harassment, Padilla was punished by being transferred from his office in Hato Rey to PSC office in Bayamón with no duties assigned to him, *see* (Docket No.1, p. 7); eighthly, that Padilla's working conditions became even more onerous by having later to work three days a week in Bayamon and two days a week in Hato Rey, *see,* (Docket No. 1, p.9) and ninthly, that Padilla was illegally discharged, four months away from qualifying for a pension, under the pretext that he destroyed certain public documents when cleaning his work area in the Hato Rey office to transfer to the PSC office in Bayamón, (the documents had no value left; they had been processed)(*see* (Docket No. 1, pp.3 & 10)); finally, the termination letter was post-dated in an attempt to defeat procedural rights of defendant. (potential appeals and/or pre-determination hearings). *See,* (Docket No. 1, p. 10)  All in all, it is within the Court's reasoning that, the factual averments as stated in the complaint present sufficient basis for an alleged violation of constitutional rights engendered by the defendants.

As to short of dismissal causes of action, in refusal to be considered for a promotion to a career position because of political affiliation and the fabrication of a sexual harassment case, the terrain has been clearly established, as in the cases of Ruttan v. Republican Party of Illinois, 497 U.S. 62, 110 S. Ct. 2729 (1990) and Agosto Feliciano v. Aponte Roque, 889 F. 2d 1209 (1ˢᵗ Cir. 1989). As to termination because of political affiliation, the terrain has been clearly mapped, Branti v. Finkel, 445 U.S. 507, 100 S. Ct. 1287, 63 L.Ed. 2d (1980).  Accordingly, the motion to dismiss, based on qualified immunity and/or not presenting averments of violations of civil rights regarding the defendants, Jose Hernández and Edgar González, in their individual capacity under section 1983,

is **DENIED.**[6]

The present case also alleges violations under 42 U.S.C. § 2000(e)-5-et seq.  Defendants are, thus, seeking dismissal for all averments related to § 2000(e)-5-et seq., arguing that discrimination because of an individual's political affiliation is not a recognized claim under Title VII.  Section §2000(e)-5 et seq., of Title VII of the Civil Rights of 1964  recognizes only five claims of discrimination within  employment context.   These claims are discrimination because of the individual's race, color, religion sex or national origin.  Plaintiffs fail to state a cause of action in any of these recognized claims under Title VII.  As a result, defendants' motion to dismiss all allegations under § 2000(e)-5-et seq of  Title VII of the Civil Rights Act of 1964, is **GRANTED**.

The Court notes that it retains jurisdiction concerning all plaintiffs' pendent jurisdiction state law claims, except for the claim under the Civil Rights Act of Puerto Rico (1 P.R. Laws Ann. §13-19).  Defendants argue that plaintiffs do not have a claim under the Puerto Rico Civil Rights Act by virtue that the definitions of public places and public business do not apply to the facts of the instant case.  Plaintiffs allege having suffered political discrimination in the workplace, which is the Public Service Commission. *See* (Docket No. 1 ¶¶ 9-11. 28-29).  The Puerto Rico Civil Rights Act defines places for public accommodation and public business as:

> auditoriums, assembly halls, and other places of public meeting; barber shops, cafes, concert halls, pastry shops, department stores and all wholesale houses, stores, factories where foodstuffs, medicines, beverages, provisions, merchandise, or distributions to the public; parks, stadiums and every other place of amusement and recreation; elevators dining rooms, hotels, eating houses, inns, theaters, athletic fields, gymnasiums, places where sporting events or competitions are held, and any other place where merchandise, services, or amusements are offered to the public.

(1 P. R. Laws Ann §18).  As defined by the Puerto Rico Civil Rights Act, the Public Service Commission cannot be categorized as a public business nor as a public place.  It should be noted

---

[6]The defendants' Rule 12(b)(6) Motion to Dismiss, on the grounds that no facts were alleged for which relief could be granted under §1983 and/or as to qualified immunity, clearly borders on temerity.

that, Puerto Rico's state jurisprudence has not extended the scope of any of these two concepts. Therefore, Defendants' motion to dismiss plaintiffs' claim under the Puerto Rico Civil Rights Act is **GRANTED**.  However, all plaintiffs' other supplemental claims under state law remain within this Court's jurisdiction**.**  "As a general principle, the unfavorable disposition of a Plaintiff's federal claim at the early states of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodríguez v. Doral Mortgage Corp., 57 F. 3d 1168, 1177 (1st Cir. 1995).  Since in the case at bar, the Court maintains jurisdiction upon several federal claims, hence, the Court also retains jurisdiction over all other supplemental claims under the  state law of Puerto Rico.

## CONCLUSION

For the reasons stated above, this Court hereby **GRANTS** in part and **DENIES** in part Defendants' *Motion to Dismiss* (Docket No. 23).

In sum, Defendants' *Motion to Dismiss* all claims relating to Defendant José Hernández in his official capacity is **DENIED**.  Defendants' *Motion to Dismiss* all the averments regarding defendants Hernández and Edgar González in their individual capacity under section 1983 is **DENIED**.  Defendants' *Motion to Dismiss* all allegations under §2000(e)-5-et seq., of Title VII of the Civil Rights Act of 1964 is **GRANTED**.  Defendants' *Motion to Dismiss* plaintiffs' claim under the Puerto Rico Civil Rights Act is **GRANTED**.  Finally, regarding the dismissal of plaintiffs' remaining supplemental local claims under state law, the requested brevis disposition is **DENIED.**

**IT IS SO ORDERED.**
**In San Juan, Puerto Rico, this 8th day of August, 2005.**

**S/ DANIEL R. DOMINGUEZ**
**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**